**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____ :
:
JEFFREY BOWIE,                      :
:          Civil Action No. 16-5808-BRM-LHG
             Plaintiff,             :
:
      v.                            :
:                     **OPINION**
COSTCO WHOLESALE                    :
CORPORATION,                        :
BRUCE DZENEORF, and                 :
JOHN AND JANE DOES 1-10,            :
:
             Defendants.            :
_____ :

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Costco Wholesale Corporation ("Costco") and Bruce

Dezendorf's ("Dezendorf")[1] (collectively, "Defendants") Motion to Dismiss the Complaint,

pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Plaintiff Jeffrey Bowie

("Plaintiff") opposes the motion. (ECF No. 12.) Pursuant to Federal Rule of Civil Procedure 78(a),

the Court heard oral argument on April 11, 2017. (ECF No. 16.) For the reasons set forth below,

Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the

Complaint as true, considers any document "integral to or explicitly relied upon in the complaint,"

and draws all inferences in the light most favorable to Plaintiffs. *In re Burlington Coat Factory*

---

[1] Defendant Bruce Dezendorf is erroneously named in the Complaint as "Bruce Dzeneorf." (ECF No. 7 at 1-2.) For the purpose of this Opinion, the Court will refer to him by his correct name.

*Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff, who at all times relevant had a son with disabilities, began working at Costco in October 1994 and eventually became a General Manager. (Compl. (ECF No. 1) at 3 ¶¶ 2, 4.) At all times relevant, Dezendorf was Plaintiff's supervisor and an employee of Costco. (*Id.* at 2 ¶ 3.) Plaintiff made Defendants aware that his son was disabled each time "plaintiff made a formal request for intermittent family leave or an accommodation." (*Id.* at 3 ¶ 4.) Defendants authorized Plaintiff's request for an accommodation and allowed him to leave work early "to attend to his son's disability." (*Id.* at 3 ¶ 5.) Accordingly, Plaintiff "occasionally" rearranged his schedule to leave early to care for his son. (*Id.* at 3 ¶ 6.)

However, on October 21, 2014, Plaintiff contends he was terminated for leaving work early "[o]n one occasion in October 2014 . . . to take care of his disabled child after he had obtained proper coverage." (*Id.* at 3 ¶ 7.) Plaintiff alleges Defendants terminated him because "they were unhappy that he had left work early and it would no longer be tolerated." (*Id.* at 3-4 ¶ 8.) He further alleges he "performed to a level that met the Defendants [sic] legitimate expectations." (*Id.* at 3 ¶ 3.)

On September 22, 2016, Plaintiff filed a seven-count complaint, alleging: (1) a violation of the Americans with Disabilities Act of 1990 ("ADA") (Count One); (2) a violation of the ADA based on associational discrimination (Count Two); (3) a violation of the New Jersey Law Against Discrimination ("NJLAD") (Count Three); (4) that Dezendorf aided and abetted unlawful discrimination under the NJLAD (Count Four); (5) claims for both intentional and negligent infliction of emotional distress (Count Five); (6) a claim for intentional interference with Plaintiff's employment relationship (Count Six); and (7) violations of the Family Medical Leave Act

("FMLA") and the New Jersey Family Leave Act ("NJFLA") (Count Seven). (ECF No. 1.) On December 20, 2016, Defendants filed a Motion to Dismiss Counts Three through Seven of Plaintiff's Complaint (ECF No. 7)[2] and filed a partial answer to the Complaint (ECF No. 9). Plaintiff opposed the Motion on January 23, 2017. (ECF No. 12.) On April 11, 2017, the Court heard oral argument. (ECF No. 16.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[2]  Although Defendants' brief states they are seeking partial dismissal of Plaintiff's Complaint, specifically as to Counts Three through Seven (ECF No. 7-1 at 1), they later argue "[t]here is no alternative basis to attach individual liability to Dezendorf under Plaintiff's remaining claims under the ADA, FMA, or NJFLA" (*Id.* at 20). All ADA claims against Defendants are actually asserted in Counts One and Two, not Three through Seven. Therefore, Defendants also seek to partially dismiss Counts One and Two as to Dezendorf, and the Court will address the dismissal of those claims as well.

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### III.  DECISION

#### A.  Associational Discrimination under the NJLAD (Count Three)

Plaintiff alleges he "is a protected class member as defined by the NJLAD . . . due to his disabled son" and was "unlawfully discriminated against on the basis of [that] disability" when he was terminated. (ECF No. 1 at 5-6 ¶¶ 4-6.) Although Plaintiff liberally uses the term "Defendants" when alleging this Count and states the Defendants "individually" and "jointly" took his son's disability into consideration, he also only specifically pleads:

> 3. Defendant, Costco [] is an "employer" as defined by the NJLAD.
>
> 4. Plaintiff . . . is a protected class member as defined by the NJLAD, being at all pertinent times, due to his disabled son.

(*Id.* at 5-6.) Because Plaintiff refers only specifically to Costco in this Count, the Court construes this Count to be construed only against Costco.[3]

Defendants construe this as a claim for associational discrimination and argue "Plaintiff's associational disability discrimination claim [under the NJLAD] should be dismissed because the [NJLAD] does not recognize such a claim." (ECF No. 7-1 at 6.) In response, Plaintiff argues

> while the [NJLAD] does not expressly identify associational discrimination it is to be construed in accordance with the principals set forth in the ADA and is in fact to be construed more broadly and more liberally as it affords greater protections than the Federal Act. More importantly, the Federal Courts applying these principals have acknowledged the existence of association disability claims under the [NJLAD].

(ECF No. 12 at 6.) Accordingly, the Court construes Count Three as a claim for associational discrimination under the NJLAD.

---

[3] Nonetheless, to the extent Plaintiff asserts this cause of action against Dezendorf individually, the claim is dismissed with prejudice for the same reasons Plaintiff fails to state a claim for individual liability in Count Four under the NJLAD, as set forth in Section III(E)(1), *infra*.

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1. The elements of an NJLAD claim vary based on the cause of action alleged. *Victor v. State*, 203 N.J. 383, 408 (2010) (listing the different prima facie elements for various NJLAD causes of action based on failure to hire, discriminatory discharge, retaliation, and hostile environment).

The NJLAD prohibits employment discrimination on the basis of a disability. *Victor v. State*, 401 N.J. Super. 596, 609 (App. Div. 2008), *aff'd as modified*, 203 N.J. 383 (2010). In order to establish a prima facie case of disability discrimination under the NJLAD, a plaintiff must demonstrate:

> (1) plaintiff was handicapped or disabled within the meaning of the statue; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position.

*Id.* Courts have also "uniformly held that the [NJLAD] . . . requires an employer to reasonably accommodate an employee's handicap." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 396 (App. Div. 2002).

Defendants take issue with Plaintiff's ability to satisfy the first element of this claim and argue the NJLAD does not protect employees from discrimination due to an employee's association with a disabled person, while Plaintiff contends such a cause of action can be prosecuted and Defendants violated the NJLAD by terminating him due to his association with his disabled son. (ECF No. 7-1 at 6-12 and ECF No. 12 at 10). The NJLAD prohibits "unlawful

discrimination against any person because such person *is or has* been at any time disabled."
N.J.S.A. §§ 10:5–4.1, –12 (emphasis added). Further, it explicitly prohibits any unlawful
discrimination of a "buyer or renter because of the disability of a person residing in or intending
to reside in a dwelling after it is sold, rented or made available or because of any person *associated*
with the buyer or renter." N.J.S.A. § 10:5–4.1. It does not, however, explicitly prohibit an employer
from taking an adverse employment action based upon an employee's association with a person
with a disability. *See* N.J.S.A. § 10:5–12. The New Jersey Supreme Court has yet to decide whether
a claim for associational employment discrimination is cognizable under the NJLAD. However,
the New Jersey Appellate Division has recognized NJLAD claims based on association despite the
lack of statutory recognition. *See O'Lone v. N.J. Dep't of Corr.*, 313 N.J. Super. 249 (App. Div.
1998) (finding the plaintiff, a white male, had a right to bring suit when he was fired for refusing
to cease dating an African-American female).

In contrast to the NJLAD, the ADA explicitly recognizes associational discrimination.
Under 42 U.S.C. § 12112(b)(4), an employer is prohibited from discriminating against an
employee as a result of "the known disability of an individual with whom [the employee] is known
to have a relationship or association." Generally, the NJLAD "has been construed in accordance
with the ADA." *Tish v. Magee-Women's Hosp. of Univ. of Pittsburgh Med. Ctr.*, No. 06-820, 2008
WL 4790733, at *15 n.15 (W.D. Pa. Oct. 27, 2008) (citing *Armstrong v. Burdette Tornlin Mem'l
Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006) ("The requirements for failure to accommodate
claims under [NJLAD] have been interpreted in accordance with the [ADA].")); *Maher v. Abbott
Labs.*, No. 11-5161, 2013 WL 6326488, at *9 (D.N.J. Dec. 4, 2013) (stating "a plaintiff may prove
discrimination under the ADA and NJLAD through the burden-shifting framework set forth by the
Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)"); *Moussavian v.*

*China Ocean Shipping Co. Americas Inc.*, No. 06-4818, 2009 WL 3074636, at *5 (D.N.J. Sept. 22, 2009) (applying the same standard for a failure to accommodate claim under the ADA and NJLAD).

Furthermore, recent federal court decisions have concluded an association claim is cognizable under NJLAD. *See, e.g.*, *Pascucci v. Twp. of Irvington, Irvington Police Dep't*, 46 F. App'x 114, 117 (3d Cir. 2002) (inferring an associational cause of action exists by affirming the district court's dismissal of that claim where "there was no evidence that [plaintiff, who was not a member of a protected class], was subject to a hostile work environment because of his friendship with [members of a protected class]); *Downs v. U.S. Pipe & Foundry Co.*, 441 F. Supp. 2d 661, 665 (D.N.J. 2006) (finding "the New Jersey Supreme court would hold that NJLAD bars employment discrimination based upon a person's association with a person with a disability"); *Valenti v. Maher Terminals LLC*, No. 14-7897, 2015 WL 3965645, at *5 (D.N.J. June 30, 2015) (finding the Third Circuit and this Court recognize "an associational right under the NJLAD"); *Pailleret v. Jersey Constr. Inc.*, No. 09–1325, 2011 WL 1485402, at *7 (D.N.J. Apr. 19, 2011) ("The NJLAD affords protection to both disabled persons as well as individuals associated with disabled persons."). *But see Kennedy v. Chubb Grp. of Ins. Cos.*, 60 F. Supp. 2d 384, 395 (D.N.J. 1999) (declining "to create a new cause of action under state law where there is no indication that the New Jersey Supreme Court would endorse such a position"); *Poveromo-Spring v. Exxon Corp.*, 968 F. Supp. 219, 226-27 (D.N.J. 1997) (stating "the LAD does not provide for association based claims"); *Maher*, 2013 WL 6326488, at *13 (finding "there is no indication that a failure to accommodate claim based on an employee's association with a disabled individual is cognizable under the NJLAD").

In *Downs*, the plaintiff was employed by U.S. Pipe for approximately twenty-one years. *Downs*, 441 F. Supp. 2d at 662. During his employment, he received several raises, was promoted several times, and reached the position of General Foreman. *Id.* The plaintiff's wife suffered from bipolar and manic depressive disorders that required hospitalization on more than one occasion. *Id.* At some point during his employment, he requested time off to care for his ill wife. U.S. Pipe denied the request, but the plaintiff nonetheless took the days off. *Id.* Shortly upon his return, he was terminated. *Id.* As a result, the plaintiff filed a complaint against his employer alleging, in part, a violation of the NJLAD. *Id.* U.S. Pipe filed a motion for summary judgment arguing the NJLAD did not provide a right of action based upon any discrimination the plaintiff may have suffered as a result of his association with his disabled wife. *Id.* at 663.

The Court held the plaintiff "was the 'functional equivalent' of a disabled person. He was deprived of the benefits of his employment because he had to repeatedly, and with minimal notice, take time off from work due to his wife's disability, making him an 'aggrieved person' under N.J.S.A. § 10:5-13." *Id.* at 664. The Court further noted:

> While both parties undertake the arduous task of statutory interpretation by comparing the language in various sections of the NJLAD and analyzing the legislative history, the Court is nonetheless persuaded by the fact [] that in the eight years since *O'Lone* was decided the New Jersey Supreme Court has not found it necessary to speak on the issue. Additionally, the Third Circuit has acknowledged that *O'Lone* and [*Berner v. Enclave Condo. Ass'n, Inc.*, 322 N.J. Super. 229 (App. Div. 1999)] stand for the preposition that there is an associational right under NJLAD. [*Pascucci*, 46 F. App'x at 117]. In the absence of any contrary authority, this Court concludes that the New Jersey Supreme Court would hold that NJLAD bars employment discrimination based upon a person's association with a person with a disability.

*Id.* at 665.

Because the Third Circuit, several New Jersey District Courts, and New Jersey Appellate Courts have acknowledged associational discrimination under the NJLAD, and because the New Jersey Supreme Court has not found it necessary to speak on the issue, which suggests it does not oppose the current legal landscape, the Court likewise finds the NJLAD affords protection to both disabled persons as well as individuals associated with disabled persons. Because Defendants seek dismissal based solely on the contention that the right Plaintiff seeks to exercise does not exist, and they do not contend he is unable to state a *prima facie* claim under the NJLAD, the Court will not rule on those issues. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's NJLAD claim (Count Three).[4]

### B.  Intentional and Negligent Infliction of Emotional Distress (Count Five)

#### 1.  Intentional Infliction of Emotional Distress

Defendants argue Plaintiff fails to allege sufficient facts to establish a claim of intentional infliction of emotional distress because he has failed to plead facts demonstrating Defendants' conduct was outrageous. (ECF No. 7-1 at 21-22.) Plaintiff argues his "claim for intentional infliction of emotional distress is backed by the facts presented in the case and is a question of fact which should properly be left to the jury." (ECF No. 12 at 13-14.) Plaintiff's Complaint does not refer to any specific defendant in this Count, but instead states "Defendants' actions as aforesaid ground a claim by Plaintiff against Defendants for Intentional and/or Negligent Infliction of Emotional Distress." (ECF No. 1 at 7 ¶ 3.) Therefore, the Court construes Count Five to be against all Defendants.

---

[4] Again, Count Three appears to be pled solely against Costco, however, to the extent Plaintiff asserts this cause of action against Dezendorf individually, the claim is dismissed with prejudice for the same reasons Plaintiff fails to state a claim for individual liability in Count Four under the NJLAD, as set forth in Section III(E)(1), *infra*.

To establish a prima facie claim for intentional infliction of emotional distress in New Jersey, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988)). "To establish extreme and outrageous conduct, a plaintiff must show conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Buckley*, 544 N.J. at 366 (citation omitted)). One will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair, and unkind." *Id.*

Courts have consistently acknowledged it is difficult to establish intentional infliction of emotional distress in the employment context. *See, e.g.*, *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Witherspoon*, 173 F. Supp. 2d at 242; *Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219, 236 (D.N.J. 2000); *Fregara v. Jet Aviation Bus. Jets,* 764 F. Supp. 940, 956 (D.N.J. 1991); *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 23-24 (App. Div. 2001).

Here, Plaintiff has failed to sufficiently allege a claim for intentional infliction of emotional distress. Plaintiff has not alleged facts demonstrating: (1) Defendants intended to cause emotional distress; (2) Defendants' conduct terminating him was extreme and outrageous; and (3) Plaintiff's emotional distress was severe. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Intentional Infliction of Emotional Distress (Count Five) claim **WITHOUT PREJUDICE**.

### 2. Negligent Inflicting of Emotional Distress

Defendant argues "the New Jersey Workers' Compensation Act bars claims that employers or co-employees negligently inflicted emotional distress." (ECF No. 7-1 at 24 (citing *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 184-96 (1985)).) At oral argument, Plaintiff conceded the New Jersey Workers' Compensation Act bars negligent infliction of emotional distress claims against employers and employees. (ECF No. 16.) Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's negligent infliction of emotional distress claim (Count Five) **WITH PREJUDICE**.

### C. Interference with Plaintiff's Employment Relationship (Count Six)

Plaintiff's Complaint alleges "John Does 1 through 10, as a direct result of their actions and/or inactions, intentionally interfered with Plaintiff's employment relationship with [Costco]." (ECF No. 1 at 7 ¶ 2.) Defendants argue Plaintiff has not pled facts suggesting malice or establishing that John Does 1 through 10 are third parties rather than parties to the employment contract. (ECF No. 7-1 at 26.) Plaintiff argues "[g]iven his malicious firing and the fact that he was fired in retaliation for having taken time off to care for his autistic son, there is interference with that relationship by Costco." (ECF No. 12 at 14.) Because Plaintiff refers specifically to John Does 1 through 10 in this Count, the Court construes this claim to be only against John and Jane Does 1 through 10.

Under New Jersey law, to establish a claim of tortious interference claim, a plaintiff must prove: (1) an existing contractual relationship; (2) the defendant intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) damages resulting from the interference. *Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006) (applying the above tortious interference factors to the plaintiff's claim that the

defendant "tortuously interfered with his employment relationship"); *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*, 870 F. Supp. 1237, 1247 (D.N.J. 1994); *see Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989). An employer, employee, or one of its agents cannot interfere with its own employment contract. *See Pitak v. Bell Atl. Network Servs., Inc.*, 928 F. Supp. 1354, 1369 (D.N.J. 1996); *McDermott v. Chilton Co.*, 938 F. Supp. 240, 247 (D.N.J. 1995); *Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J. Super. 523, 529 (App. Div. 1984).

In this case, Plaintiff alleges "John Does 1 through 10 . . . intentionally interfered with Plaintiff's employment relationship with [d]efendant, Costco." (ECF No. 1 at 7 ¶ 2.) He does not, however, identify whether John Does 1 through 10 are employees of Costco or third parties. Because John Does 1 through 10 may be employees of Costco and an employer cannot interfere with its own employment contract, Plaintiff has failed to sufficiently plead a claim for tortious interference. Further, Plaintiff's Complaint fails to plead conduct demonstrating any of the Defendants acted with malice. Because Plaintiff has not sufficiently pled a claim against any John or Jane Doe—whether an employer, employee, or agent of the employer—the Court **GRANTS** Defendants' Motion to Dismiss Count Six as it applies to Defendants **WITHOUT PREJUDICE**, but the claim remains to the extent John Does 1 through 10 represent third parties.

### D.  FMLA and NJFLA Claims (Count Seven)

Plaintiff's Complaint alleges he "requested that he be granted [FMLA and NJFLA] time off in order to care for his disabled son during a meeting with his superior at Costco, Bruce Dezendorf." (ECF No. 1 at 8 ¶ 2.) It further alleges his request for time off of work under the FMLA was denied and he was "forced to make his own arrangement and accommodations so that he could care for his disabled son following the denial of his request," and was thereafter terminated. (*Id.* at 8 ¶ 4.) Because Plaintiff refers to Dezendorf individually and "Defendants" in

13

Count Seven, the Court construes this claim to be against all Defendants. FMLA and NJFLA claims specific to Dezendorf will be addressed below. *See* Section III(E)(3)-(4), *infra*.

Defendants argue Plaintiff's FMLA and NJFLA claims should be dismissed because Plaintiff fails to adequately plead such claims. (ECF No. 7-1 at 12.) Specifically, Defendants argue "Plaintiff's Complaint is devoid of any allegations establishing that he is eligible for FMLA or NJFLA leave" because he failed to allege "he worked 1,250 hours during the last 12 months prior to October 2014 to qualify for FMLA leave or worked 1[,]000 base hours during the last 12 months prior to October 2014 to qualify for NJFLA leave." (*Id.*) In the alternative, Defendants argue "the Complaint offers no facts sufficient to state a plausible interference or retaliation claim." (*Id.* at 14 (alteration in original).) Plaintiff argues he "clearly established that he was employed for the statutorily necessary periods of time prior to his termination" because he was employed at Costco since 1994. (ECF No. 12 at 10.)

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition. 29 U.S.C. § 2612(a)(1)(C). A plaintiff is an "eligible employee" for FMLA purposes if he was employed "for at least 12 months by the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). It further provides that an

> employee who takes leave under section 2612 . . . shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment held by the employee when the leave commenced; or . . . to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). It shall be unlawful for an employer to: (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA and (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615.

Under the NJFLA, an employee is "entitled to a family leave of 12 weeks in any 24-month period upon advance notice to the employer . . . [i]n the case of a family member who has a serious health condition." N.J.S.A. § 34:11B-4. An "employee" "means a person who is employed for at least 12 months by an employer . . . for not less than 1,000 base hours during the immediately preceding 12-month period." N.J.S.A. § 34:11B-3(e). Similar to the FMLA, the NJFLA provides:

> An employee who exercises the right to family leave . . . shall . . . be entitled to be restored by the employer to the position held by the employee when the leave commenced or to an equivalent position of like seniority, status, employment benefits, pay, and other terms and conditions of employment.

N.J.S.A. § 34:11B-7. It shall also be unlawful for any employer to "interfere with, restrain or deny the exercise of, or the attempt to exercise, the right provided under [the NJFLA]." N.J.S.A. § 34:11B-9(a).

"Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA." *Wolpert v. Abbott Labs.*, 817 F. Supp. 2d 424, 437 (D.N.J. 2011) (citing *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 596 (D.N.J. 2006)).

To prevail on an interference claim, a plaintiff must show: (1) he was entitled to take FMLA and NJFLA leave and (2) the employer denied his right to do so. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012); *Hall-Dingle v. Geodis Wilson USA, Inc.*, No. 15-1868, 2017 WL 899906, at *4 (D.N.J. Mar. 7, 2017) ("[A] plaintiff bringing an interference claim under the [NJFLA] must show that she was entitled to benefits and denied those benefits.").

15

"To establish a prima facie claim for retaliation under the FMLA and NJFLA, the plaintiff must demonstrate that: (1) [he] took a FMLA/NJFLA leave; (2) [he] suffered from an adverse employment decision; and (3) the adverse decision was casually related to [his] FMLA/NJFLA leave." *Valenti*, 2015 WL 3965645, at *3 (quoting *Truesdell v. Source One Personnel Inc.*, No. 07-1926, 2009 WL 1652269, at *4 (D.N.J. June 9, 2009) (citations omitted)). Once the plaintiff establishes a prima facie claim for retaliation under the FMLA and NJFLA, the claim must be analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (stating that once the plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its alleged unlawful action, and if that is satisfied, the burden shifts back to the plaintiff to demonstrate the evidence proffered by the employer was a pretext for retaliation). *See Truesdell*, 2009 WL 1652269, at *4.

In this case, Plaintiff has failed to allege sufficient factual matter to establish he was an employee entitled to FMLA and NJFLA leave at the time of his termination. While he alleges he was employed by Defendants for at least twelve months, stating he began his employment in 1994 and was terminated in 2014, he fails to allege the number of hours he worked during his employment. Without any factual allegations regarding the total number of hours worked, his weekly schedule, his status as a full-time or part-time employee, or any other relevant allegation, he has not established he worked at least 1,250 hours in the 12-month period prior to his request as required by the FMLA, 29 U.S.C. § 2611(2)(A), or 1,000 base hours during the immediately preceding 12-month period required by the NJFLA, N.J.S.A. § 34:11B-3(e). *See Rodriguez v. JSPLTC, LLC*, No. 12-6565, 2013 WL 1791145, at *3 (D.N.J. Apr. 25, 2013) (dismissing the plaintiff's FMLA and NJFLA claims because the plaintiff failed to allege the number of hours she worked during her employment, and thus did not establish that she worked at least 1, 250 hours in

16

the previous 12-months period before her leave request).[5] Because Plaintiff failed to allege facts in his Complaint demonstrating his eligibility for FMLA and NJFLA leave, the Court **GRANTS** Defendants' Motion to Dismiss Count Seven of Plaintiff's Complaint on this basis as Costco **WITHOUT PREJUDICE**.

In his Supplemental Brief, Plaintiff asks that if the Court finds he did not sufficiently plead facts demonstrating he was an employee entitled to FMLA and NJFLA leave at the time of his termination, it provide him with the opportunity to amend the Complaint as to this issue instead of dismissing the Count. (ECF No. 17 at 4.) Plaintiff's request is **GRANTED IN PART** in that Plaintiff may file an amended complaint addressing all deficiencies within thirty days (30) of the accompanying Order. However, Count Seven is dismissed as stated above in the interim.

### E.  Dezendorf's Individual Liability

#### 1.  Aiding and Abetting Claim under NJLAD (Count Four)

Plaintiff's Complaint alleges Dezendorf "aided and abetted in the illegal discharge of Plaintiff" and as a result of his "willful, knowing and intentional aiding and abetting the discrimination [sic] against Plaintiff" in violation of the NJLAD. (ECF No. 1 at 6 ¶¶ 2-3.) Defendant argues Plaintiff's aiding and abetting claim under the NJLAD against Dezendorf fails because "Plaintiff does not allege any facts to suggest the necessary elements to impose individual liability upon Dezendorf. Plaintiff's Complaint alleges little to nothing about Dezendorf's role in

---

[5] In his Opposition, Plaintiff attached an unsworn declaration stating he was a full-time employee, worked forty hour weeks, and worked 1,250 hours the year prior to his request for leave. (ECF No. 12-1.) Because, as a general matter, the Court "may not consider matters extraneous to the pleadings," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426, and the declaration is not authenticated or sworn, the Court cannot consider it. *Cf. In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Plaintiff's alleged unlawful termination other than that Dezendorf supervised Plaintiff and was displeased on one instance when Plaintiff left work early." (ECF No. 7-1 at 18.) Plaintiff argues his Complaint sufficiently establishes Dezendorf aided and abetted Costco in violation of the NJLAD. (ECF No. 12 at 11-13.) Because Plaintiff refers specifically to Dezendorf in this Count, the Court construes this claim to be only against Dezendorf.

The NJLAD provides it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [the act], or to attempt to do so." N.J.S.A. § 10:5-12(e). Such conduct may result in personal liability. *Tarr*, 181 N.J. at 83; *see Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) ("The [NJ]LAD permits the imposition of individual liability on an employee who has aided or abetted barred acts.").

To plead a prima facie case for aiding and abetting, a plaintiff must plead that:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Tarr*, 181 N.J. at 84 (quoting *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 129 (3d Cir. 1999)); *see O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016). To determine whether a supervisor has provided "substantial assistance" to the principal violator, the court looks to several factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." *Tarr*, 181 N.J. at 84.

An individual can aid and abet his own conduct. *O'Toole*, 203 F. Supp. 3d at 467 ("[C]ourts construe the aiding and abetting theory broadly, such that an individual supervisor can aid and abet his own conduct."); *Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 529-30 (D.N.J. 2014) (concluding the supervisor was a proper party under the NJLAD because "an individual can be held liable under the aiding and abetting provision even where the individual performed the acts of discrimination himself").

The Complaint does not allege facts giving rise to an inference that Dezendorf aided or abetted in violation of the NJLAD. Plaintiff merely alleges Dezendorf was his supervisor, that "[d]espite having been purportedly granted an accommodation, when Plaintiff returned to work, he was informed by Defendants, [Costco and Dezendorf], that they were unhappy that he had left work early and it would no longer be tolerated," and that Defendants terminated him. (ECF No. 1 at 3 ¶¶ 3, 8.) There is no allegation Dezendorf was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance" or that he "substantially assisted" in the alleged violation. *Tarr*, 181 N.J. at 84. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss all NJLAD claims against Dezendorf (Count Four) **WITHOUT PREJUDICE**.

### 2. ADA (Counts One and Two)

Defendants argue Plaintiff's ADA claim against Dezendorf should be dismissed because there is no individual liability under the ADA. (ECF No. 7-1 at 20.) Plaintiff does not respond to this argument.

There is no individual liability for damages under Title 1 of the ADA. *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010); *Wardlaw v. City of Phila. St.'s Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010); *Koslow v. Pa.,* 302 F.3d 161, 178 (3d Cir. 2002). Because individuals cannot be

held liable under the ADA, the Court **GRANTS** Defendants' Motion to Dismiss all ADA claims (Counts One and Two) against Dezendorf **WITH PREJUDICE**.

### 3.  NJFLA (Count Seven)

Defendants also move to dismiss Plaintiff's NJFLA claim against Dezendorf on the grounds that individual liability does not exist under the NJFLA. (ECF No. 7-1 at 20.) Plaintiff does not respond to this argument.

There is no individual liability under the NJFLA. *Fisher v. Schott*, No. 13-5549, 2014 WL 6474216, at *6 (D.N.J. Nov. 19, 2014) (finding that "individual liability does not exist as a matter of law under the NJFLA" because of "the more limited definition of 'employer' under the NJFLA"); *Stone v. Winter Enters., P.C.*, No. 12-465, 2012 WL 6155606, at *5 (D.N.J. Dec. 11, 2012) (dismissing the plaintiff's NJFLA claim against an individual defendant because the NJFLA's definition of "employer" was narrow and did not include persons acting for an employer, and the Court found no New Jersey case that imposed individual liability under the NJFLA); *Ross-Tiggett v. Reed Smith LLP*, No. 15-8083, 2016 WL 4491633, at *4 (D.N.J. Aug. 25, 2016) (finding no individual liability under the NJFLA). Because individuals cannot be held liable under the NJFLA, the Court **GRANTS** Defendants' Motion to Dismiss all NJFLA claims (Count Seven) against Dezendorf **WITH PREJUDICE**.

### 4.  FMLA (Count Seven)

Defendant argues that "while the FMLA may impose individual liability upon supervisors . . . Plaintiff does not sufficiently allege a plausible inference or discrimination claim under the FMLA." (ECF No. 7-1 at 20.) Plaintiff does not respond to this argument.

The FMLA does allow for individual liability. *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 413 (3d Cir. 2012). The FMLA defines an "employer" as "any person

engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year" and includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A). "Section 2611(4)(A)(ii)(I)'s inclusion of 'any person who acts, directly or indirectly, in the interest of an employer' plainly contemplates that liability for FMLA violations may be imposed upon an individual person who would not otherwise be regarded as the plaintiff's 'employer.'" *Haybarger*, 667 F.3d at 413 (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)). Otherwise, that phrase adds nothing to the definition of an employer. *Id.*

Although the FMLA allows for individual liability, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's FMLA claim (Count Seven) against Dezendorf **WITHOUT PREJUDICE,** because as articulated above, *see* Section III(D), *supra*, Plaintiff has failed to allege sufficient factual matter to establish he was an employee entitled to FMLA leave at the time of his termination. Without any factual allegations regarding the total number of hours worked, his weekly schedule, his status as a full-time or part-time employee, or any other relevant allegation, he has not established that he worked at least 1,250 hours in the previous 12-month period before his request as required by the FMLA. 29 U.S.C. § 2611(2)(A); *see Rodriguez*, 2013 WL 1791145, at *3.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows: (1) Defendants' Motion to Dismiss Counts One and Two as to Dezendorf is **GRANTED WITH PREJUDICE**; (2) Defendants' Motion to Dismiss Count Three is **GRANTED WITHOUT PREJUDICE** as to Dezendorf and **DENIED** as to Costco; (3) Defendants' Motion to Dismiss Count Four is **GRANTED WITHOUT PREJUDICE**; (4)

Defendants' Motion to Dismiss Count Five is **GRANTED WITHOUT PREJUDICE** as to Plaintiff's claim for intentional infliction of emotional distress and **WITH PREJUDICE** as to Plaintiff's claim for negligent infliction of emotional distress; (5) Defendant's Motion to Dismiss Count Six is **GRANTED WITHOUT PREJUDICE**; (6) Defendants' Motion to Dismiss Count Seven is **GRANTED WITH PREJUDICE** as to the NJFLA claim against Dezendorf, **WITHOUT PREJUDICE** as to the FMLA claim against Dezendorf, and **WITHOUT PREJUDICE** as to the claims against the remaining Defendants. Plaintiff may file an amended complaint within thirty (30) days of the Accompanying Order.


Date: July 26, 2017                              */s/ Brian R. Martinotti*_____
                                                 **HON. BRIAN R. MARTINOTTI**
                                                 **UNITED STATES DISTRICT JUDGE**